**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

TRINITY UNIVERSAL
INSURANCE COMPANY,

        Plaintiff,

        v.

GEORGIA CASUALTY
& SURETY CO., et al.,

        Defendants.

CIVIL ACTION NO.
1:08-CV-1332-JOF

## OPINION AND ORDER

The instant matter is before the court on Plaintiff Trinity Universal Insurance Company's Motion for Summary Judgment [31].

**I.    Background**

The instant matter is an insurance coverage dispute regarding a Commercial General Liability Policy issued by Plaintiff to Defendant Plant Equipment Fabricators, Inc. ("PEF"), for the period between April 1, 2004 and April 1, 2005 ("the Policy"). The Policy directed PEF to notify Plaintiff "as soon as practicable" of any "occurrence" or offense which might result in a claim, any claim actually made against PEF, and any suit brought against it. (*Policy*, Compl., Ex. A-2 at Commercial General Liability Coverage Form § IV(2)). The Policy also states that PEF must immediately send Plaintiff copies of any demands, notices,

summonses, or other legal papers received in connection with a claim or suit. (*Id.*). An endorsement to the Policy added additional language regarding notice: "Your rights afforded under this Policy shall not be prejudiced if you fail to give us notice of an 'occurrence,' offense, claim or 'suit' solely due to your reasonable and documented belief that the 'bodily injury' or 'property damage' is not covered under the policy." (*Id.* at Commercial General Liability Coverage Expansion Endorsement § 12). Under the Policy an "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at Commercial General Liability Coverage Form § V(13)).

In February 2000, PEF delivered a custom-ordered pigskin cooker or rendering kettle to Defendant Lee's Pigskins Co. ("Lee's"). Five years later, in February 2005, a fire occurred at Lee's, allegedly originating from the pigskin cooker. The fire resulted in significant losses. Lee's insurer, Defendant Georgia Casualty & Surety Co. ("Georgia Casualty"), paid more than $800,000 in insurance proceeds to Lee's. Lee's alleges it suffered losses in excess of the amount paid by Georgia Casualty. Counsel for Georgia Casualty sent a certified letter to Harold West, the registered agent of PEF, dated December 20, 2005, which read:

> As you may be aware, a major fire occurred at the manufacturing location of the Insured [Lee's] named above in New Hebron, Mississippi, on February 16, 2005, which has caused significant loss of property and income to the Insured. Preliminary examination of the scene of the fire has suggested

2

> that equipment manufactured/fabricated by your company was the cause of the fire -- specifically the "pigskin cooker" (rendering kettle) purchased from you by the insured on or about November 3, 1999.
>
> The rendering kettle has been maintained at Brandon Service Company in Jackson, Mississippi, since shortly after the date of loss, and is there and available for your inspection at your convenience.
>
> This will notify you that destructive testing is going to be performed on the rendering kettle on or about January 15, 2006. If you wish to inspect the kettle prior to that date and/or observe the destructive testing when it is performed, please notify the undersigned promptly at the contacts listed above.
>
> Thanking you in advance for your prompt attention to and consideration in this matter, I am, yours sincerely . . . .

(12/05 Letter, Cmpl., Ex C). West received the letter and executed a certified receipt card. He did not notify Plaintiff about it or call the sender to request additional information. West did not take any action regarding the letter because he "did not imagine having any liability for any events in Mississippi and did not understand the letter to be anything other than FYI." (P. SMF ¶ 14). He thought he did not have enough information to warrant notifying anyone. (*Id.* ¶ 13).

In June 2006, Georgia Casualty and Lee's counsel faxed a second letter to PEF which informed PEF that an expert would be photographing the Lee's pigskin cooker and PEF was welcome to attend. (06/06 Letter, Cmplt., Ex. D). After discussing this letter and the December 2005 letter with his former corporate secretary, John West faxed this letter to his insurance agent. (Agent Fax, Cmplt., Ex. E). On June 16, 2006, West's agent faxed

3

a copy of both letters along with an ACORD Notice of Occurrence Form to Trinity. (Trinity Fax, MSJ, Ex 1). Plaintiff issued a reservation of rights letter dated June 22, 2006, advising PEF that Plaintiff would be investigating the fire loss and was reserving its right to deny coverage based upon PEF's "failure to comply with the policy conditions [in §§ IV(2)] regarding notice of a claim or suit." (Res. Letter, Cmplt., Ex. F).

On February 15, 2008, Georgia Casualty, Lee's, and Defendant Southern Specialty Foods, Inc. ("Southern Specialty"), filed suit against PEF in the United States District Court for the Southern District of Mississippi (Civil Action No. 2:08-CV-35KS-MTP) claiming strict liability, negligence, and breach of warranty and alleging that defective conditions in PEF's pigskin cooker proximately caused or contributed to its damages in the February 2005 fire ("the Underlying Lawuit"). Plaintiff became aware of the Underlying Lawsuit on February 22, 2008, when it received a courtesy copy of the complaint from Georgia Casualty, Lee's, and Southern Specialty's counsel. (02/08 Letter, Cmpl., Ex. B). On April 4, 2008, Plaintiff filed the instant declaratory judgment action requesting a ruling from this court on its duties and obligations to PEF under the Policy with respect to the Underlying Suit. Plaintiff now moves for summary judgment on the grounds that Defendants failed to properly notify it of the occurrence giving rise to the Underlying Suit.

4

**II. Discussion**

The issue before this court is whether Plaintiff is relieved of its obligation to provide a defense or indemnity to Defendants in connection with the Underlying Suit because Defendants failed to properly notify Plaintiff of the occurrence leading to the Underlying Lawsuit as required by the Policy.

The obligations of parties to an insurance policy are a matter of contract, and the parties are bound by the terms of the policy. *Resolution Trust Corp. v. Artley*, 24 F.3d 1363, 1367 (11th Cir. 1994).[1] The Policy clearly states that PEF must notify Plaintiff "as soon as practicable" of any "occurrence," or offense which *might* result in a claim, any claim actually made against PEF, or any suit brought against PEF. (Policy, Compl., Ex. A-2 at Commercial General Liability Coverage Form § IV(2)). The Policy also clearly states that PEF must immediately send Plaintiff copies of any demands, notices, summonses, or other legal papers received in connection with a claim or suit. (*Id.*).

It is well established under Georgia law that notice provisions which are made a condition precedent to coverage are valid, and where an insured has not demonstrated sufficient justification for failure to give notice in accordance with such notice provisions, then the insurer is not obligated to provide coverage or a defense. *Federated Mut. Ins. Co.*

---

[1] The Policy was delivered in Georgia to a Georgia corporation, and this court must interpret it in accordance with Georgia law. *See Howard v. Doe*, 174 Ga. App. 415, 415 (1985) (noting under Georgia conflict of law rules, place of delivery of insurance contract controls).

*v. Ownby Enterprises, Inc.*, 278 Ga. App. 1, 2 (2006); *Plantation Pipeline Co. v. Royal Indem. Co.*, 245 Ga. App. 23, 28 (2000); *Richmond v. Georgia Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 221 (1976). A condition precedent to coverage is a condition which must be performed by the insured before the insurer becomes bound to fulfill its obligations under an insurance agreement. *See Wolverine Ins. Co. v. Sorrough*, 122 Ga. App. 556, 560-61 (1970) (discussing conditions precedent). Generally, notice provisions are made a condition precedent to coverage so that insurers can be certain that they are given the opportunity to investigate the facts surrounding an incident promptly and to prepare a defense or settlement while the facts are still fresh and witnesses are still available. *Richmond*, 140 Ga. App. at 221. Where the failure to give notice is not made a condition precedent to coverage, an insured's failure to give notice does not preclude coverage unless the insurer has been prejudiced by the delay. *See Manzi v. Cotton States Mut. Ins. Co.*, 243 Ga. App. 277, 278 (2000) (examining the holding in *Gregory v. Allstate Ins. Co.*, 134 Ga. App. 461 (1975) where the policy was not made a condition precedent to coverage).

Here, Defendants argue giving notice was not a condition precedent to coverage and Plaintiff was not prejudiced by the six-month delay. Numerous Georgia courts, including this one, have found notice provisions very similar, if not identical to, the ones in the body of the Policy to be conditions precedent to coverage. *See Travelers Indem. Co. of Conn. v. Douglasville Devel., LLC*, No. 1:07-CV-0410, 2008 WL 4372004 (N.D. Ga. Sept. 19, 2008)

6

(Forrester, J.) (discussing almost identical language as condition precedent); *Alea London Ltd. v. Howard*, No. 7:06-CV-34, 2008 WL 693799 (M.D. Ga. March 12, 2008) (same); *Kay-Lex Co. v. Essex Ins. Co.*, 286 Ga. App. 484, 488 (2007) (same); *Fed. Mut.*, 278 Ga. App. at 2 (same). Defendants contend that the notice provisions in the Policy here are different because of the additional notice language in the expansion endorsement[2] which does not appear to have been present in the policies discussed in other cases. Defendants appear to argue that this language eliminates any notice condition precedent all together. The court cannot find any decisions addressing this endorsement language.

Having read and considered the language of the endorsement and the purpose of notice provisions, the court cannot accept Defendants' argument that the language in the endorsement converts the notice language in the body of the policy from a condition precedent to a mere request to provide notice. The court finds that the language in the endorsement merely spells out one manner in which the insured may provide sufficient justification for failure to give notice. Having found that notice is a condition precedent, the court need not consider the issue of prejudice. *See Travelers*, No. 1:07-CV-0410, 2008 U.S. Dist. Lexis 71956, at *17-18 (holding that "it is well established under Georgia common law

---

[2] "Your rights afforded under this Policy shall not be prejudiced if you fail to give us notice of an 'occurrence,' offense, claim or 'suit' solely due to your reasonable and documented belief that the 'bodily injury' or 'property damage' is not covered under the policy." (Policy, Compl. Ex. A-2 at Commercial General Liability Coverage Expansion Endorsement § 12).

7

that prejudice is irrelevant to an insurer's assertion of notice as a coverage defense because failure to give timely notice is a failure of a condition precedent to coverage which alone voids coverage"); *Southeastern Express Sys. v. S. Guar. Ins. Co.*, 224 Ga. App. 697, 701 (1997) (finding insurer did not have to show it was prejudiced by late notice because notice was a condition precedent).

Having found that notice is a condition precedent to coverage, the court will examine whether Defendants have offered a significant justification for their failure to provide notice within six months of receiving the December 2005 letter. The meaning of "as soon as practicable," the sufficiency of an insured's excuse, and an insured's diligence in providing notice after all impediments to notice are removed are generally questions of fact to be determined by a jury, according to the nature and circumstances of each individual case. *Gibson v. Dempsey*, 167 Ga. App. 23, 33 (1983). Georgia courts, including this one, have found on a number of occasions, however, that the justification offered by an insured for failure to notify the insurer was unreasonable as a matter of law under the nature and circumstances of the case. *S. Guar. Ins. Co. v. Miller*, 183 Ga. App. 261, 262-63 (1987).

Defendants argue that their failure to give notice for six months after receiving the December 2005 letter was justified because (1) PEF neither knew nor should have known upon receipt of the December 2005 letter that the Lee's fire could result in a claim; and (2) PEF failed to provide notice solely because of a reasonable and documented belief that the

8

subject of the damage was not covered under the policy. These justifications are similar but the first argument is based upon the common law, and the second is based upon the contract language in the expansion endorsement of the Policy.

West did not take any action with respect to the December 2005 letter other than to show it to his son because he determined that the letter did not provide enough information to necessitate notifying anyone; he did not imagine that he had any liability for the Mississippi fire; and he thought the letter was a courtesy or an FYI. Defendants contend that PEF and West neither knew nor should have known that the December 2005 letter could result in a claim because West is an unsophisticated person; there had never been any allegations of improper functioning with respect PEF's rendering tanks; PEF had a good relationship with Lee's and had not had any complaints from Lee's about the tank in the five years it was in use before the fire; the December 2005 letter did not reference a claim or potential lawsuit and the tone of the letter was courteous and polite; and Lee's had not contacted PEF during the ten months since the fire. Defendants maintain that these facts create a question for the jury as to whether a reasonable person would have known to report the December 2005 letter to his or her insurer.

While an insured may not generally justify his failure to provide notice by claiming that he determined that he had no liability for the incident or that the incident is not covered under the policy, he can justify his failure to give notice by claiming that an incident was so

AO 72A
(Rev.8/82)

trivial that a reasonable person would not believe that it would result in a claim. *Id.* at 263. *See also Travelers* No. 1:07-CV-0410, 2008 U.S. Dist. Lexis 71956, at *14-15 (holding that an insured may not independently determine whether an offense which may result in a claim is covered or whether the insured is liable for the offense); *Newberry v. Cotton States Mut. Ins. Co.*, 242 Ga. App. 784 (2000) (addressing insurer's obligation to defend insured under his homeowner's policy in intentional tort suit arising out of physical altercation between insured and another guest at hotel party); *Guar. Nat'l Ins. Co. v. Brock*, 222 Ga. App. 294 (1996) (addressing a school system transportation supervisor sued individually under a theory of negligent hiring after a school bus accident in which he was not directly involved and finding that an insured is not required to foresee every possible claim, no matter how remote, that could have arisen from an accident but is only required to act reasonably under the circumstances).

Here, the Policy required that PEF notify Plaintiff not only of all claims or demands but also of all "occurrences." An occurrence as defined in the Policy is "an accident" or exposure to harmful conditions. The December 2005 letter specifically stated that an accident, a fire, has occurred, and that the parties charged with investigating the accident believe that PEF's product may have caused the fire. Plaintiff has a strong case that this letter would have notified a reasonable person of a potential claim and directed him or her as to how to proceed in defending that claim (by being present at the inspection of the

10

product); however, the court need not decide as much because there is no question in this court's mind that the December 2005 letter would have notified a reasonable person that an "occurrence" had occurred which necessitated action. That is all that is required to trigger the notice provision. Plaintiff's claim that the December 2005 letter did not provide enough information to necessitate notifying anyone is unpersuasive at best. The letter specifically provides a file number and contact information; the letter specifies an action that the receiver may take (notifying the contact that he would like to be present at the testing); the letter requests the reader's "prompt attention to" the matters therein; and the letter was mailed certified mail with a return receipt requested, indicating that it was more than a mere courteous "FYI" but that the sender wanted to document that he had provided PFE with the information contained in the letter. Recently in *Traverlers Indemnity*, cited elsewhere in this opinion, this court plainly rejected an insured's justification for lack of notice that it believed a notification was "no big deal." The court finds no reason to accept this same justification here.

As a second justification Defendants contend under the contract language in the expansion endorsement that PEF had a reasonable and documented belief that the alleged property damage [the fire damage at Lee's] was not covered under the policy. The expansion endorsement stated, "Your rights afforded under this Policy shall not be prejudiced if you fail to give us notice of an 'occurrence,' offense, claim or 'suit' solely due

11

to your reasonable and documented belief that the 'bodily injury' or 'property damage' is not covered under the policy." As the court examined above, under Georgia law, an insured generally may not justify his failure to provide notice by claiming that he determined that the insured had no liability for the incident. *See Travelers* No. 1:07-CV-0410, 2008 U.S. Dist. Lexis 71956, at *14-15 (holding that an insured may not independently determine whether an offense which may result in a claim is covered, and doubt as to coverage is no excuse for lack of notice). The expansion endorsement contractually modifies this principle by allowing an insured to justify his failure to notify in this way as long as his determination that the policy does not cover the incident was (1) his "sole" reason for not notifying the insurer, (2) reasonable, and (3) documented.

Here, PEF claims it did not notify the insurer because it did not have enough information; it could not "imagine" having any liability for the fire; and it thought that the December 25 letter was just a courtesy "FYI." PEF's CEO did not testify that he examined his policy or had anyone else examine it and that after this examination he determined the incident was not covered. Defendants do not point to any particular provision which they relied on in forming a belief that the Policy did not cover the incident in Mississippi. Further, Defendants' argument that they did not conceive of the letter as a claim or "occurrence" actually belies their argument here. The court cannot believe that Defendants analyzed the policy, determined there was no coverage, and based their decision not to

12

notify Plaintiff solely on this determination when Defendants argue that they did not even consider the incident in question to be an "occurrence" or raise a claim. Defendants' actions do not fall under the contractual language of the expansion endorsement.

The court has determined that notice was a condition precedent to coverage and has found PEF justifications to be largely unpersuasive. The only remaining question before the court is whether the six-month delay was unreasonable as a matter of law. Where notice is a condition precedent to coverage, Georgia courts have held delays of four months to one year to preclude recovery as a matter of law. *See Cotton*, 652 F. Supp. at 856 ("The Georgia courts have repeatedly held that where no valid excuse exists, failure to give written notice for periods in the range of four to eight months is unreasonable as a matter of law."); *EVI Equipment, Inc. v. Northern Ins. Co.*, 188 Ga. App. 818 (1988) (eleven-month delay); *Bituminous Casualty Corp. v. J.B. Forrest & Sons, Inc.*, 132 Ga. App. 714 (1974) (four-month delay). This court finds that given the language of the December 25 letter and Defendants' failure to offer any persuasive justification for PEF's failure to take any action with respect to the letter, the six-month delay in notice was unreasonable as a matter of law and bars coverage.

## III.  Conclusion

Plaintiff's Motion for Summary Judgment is GRANTED [31].

13

**IT IS SO ORDERED** this 28th day of April 2009.

              s/ J. Owen Forrester
              J. OWEN FORRESTER
         SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)